## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

S.A., a minor, by his parents and next friends,
Daniel Adcock and Pamela Wasserman
9038 Saffron Lane
Silver Spring, Maryland 20901,

and

DANIEL ADCOCK AND PAMELA WASSERMAN
9038 Saffron Lane
Silver Spring, Maryland 20901

        Plaintiffs,

        v.

JERRY D. WEAST (officially as),  Superintendent,
Montgomery County Public Schools,
850 Hungerford Drive,
Rockville, Maryland 20850,

and

MONTGOMERY COUNTY BOARD OF
EDUCATION,
850 Hungerford Drive,
Rockville, Maryland 20850,

        Defendants.

Civil Action No. _____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### Preliminary Statement

1.      This is an action brought by plaintiffs Daniel Adcock and Pamela Wasserman

("the parents"), in their own right and on behalf of their son, S.A., alleging that Montgomery

County Public Schools ("MCPS") failed to provide S.A. with the Free Appropriate Public

Education ("FAPE") to which he is entitled under the Individuals With Disabilities Education

Improvement Act ("IDEA"), 20 U.S.C. §§1400 *et seq.*  In addition, the Administrative Law

Judge ("ALJ") in this action compounded the violation when she erred in concluding that the

Individualized Education Program ("IEP") of September 28, 2010, offered by MCPS constituted

a FAPE in the least restrictive environment ("LRE"), and that the parents were not entitled to

reimbursement or continued funding for S.A. at the Lab School of Washington ("Lab").  For any

of these reasons, we respectfully submit that the Court should reverse the ALJ's decision.

### Jurisdiction

2.      This Court has jurisdiction pursuant to the Individuals with Disabilities Education

Improvement Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*; the Rehabilitation Act of 1973 ("Section

504"), 29 U.S.C. § 794;  42 U.S.C. § 1983 ("Section 1983"); and 28 U.S.C. §§ 1331 and 1343.

Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.  This Court has pendent

jurisdiction pursuant to MD. CODE ANN. EDUC. § 8-401 *et seq.*, (1996).  Plaintiffs have exhausted

their administrative remedies and appeal from a decision of an Administrative Law Judge

("ALJ") of the Maryland Office of Administrative Hearings, MSDE-MONT-OT-10-44973 (April

15, 2011).

### Parties

3.      S.A. is an eleven-year-old disabled student, eligible to receive special education

and related services, who at all times relevant to this action resided in Montgomery County,

Maryland.  His parents Daniel Adcock and Pamela Wasserman bring this action on S.A.'s behalf

and in their own right.

4.      Jerry D. Weast is the Superintendent of the Montgomery County Public Schools

("MCPS" or "the school system") and, as such, is the public official charged with the

responsibility for ensuring that MCPS complies with federal law as to the education of disabled

children. He is sued in his official capacity.

5.     The Montgomery County Board of Education is a local educational agency as

defined by 20 U.S.C. § 1401, and, as such, receives financial assistance from the United States

Department of Education. The Montgomery County Board of Education is responsible for

complying with federal law with respect to the provision of a FAPE to each disabled child in

Montgomery County.

## Factual Allegations

6.     MCPS has determined that S.A is eligible to receive special education and related

services under the IDEA. MCPS first identified S.A. as a student with a Specific Learning

Disability ("SLD") in November, 2007, and he began receiving minimal special education

support at that time. S.A. has been diagnosed with dyslexia, as well as Attention Deficit

Hyperactivity Disorder ("ADHD"). He had significant issues with many aspects of school,

including written expression, word retrieval, working memory and executive functioning and

organization. S.A. has demonstrated anxiety and frustration over his lack of progress and

academic difficulties caused by his learning disabilities, to the point that the parents have had to

provide private psychotherapy services for him.

7.     S.A. was first diagnosed at the age of five with dyslexia, prior to entering

kindergarten at Highland View Elementary School ("HVES"). In light of this diagnosis, S.A's

parents approached MCPS prior to the start of kindergarten to request special education services.

The parents submitted a private evaluation supporting the diagnosis and the resulting need for

special education services. However, in July 2005, MCPS denied the parents' request to find

S.A. eligible for special education, explaining that it was unwilling to identify him with a learning disability before the age of eight.

8.      Working in the absence of an IEP, the parents nevertheless kept trying to get S.A. the services he needed. For instance, in the fall of 2005, they submitted to MCPS a Speech and Language evaluation from a private therapist from whom S.A. was receiving summer tutoring in reading. The evaluation recommended that S.A. receive pull-out speech-language support at school. In November 2005, MCPS denied this request.

9.      Again, in February, 2006, a reading assessment administered by an HVES reading specialist showed S.A. to be in the "High Risk" category in some reading skills areas, and recommended classroom teaching strategies. During the summer between kindergarten and first grade, the parents had retained private tutors from Kingsbury Day School to help S.A. with his reading skills. Throughout first grade, S.A. struggled with reading and language skills, and attentional issues.

10.     During the fall of second grade, the parents submitted a recent neuropsychological evaluation which confirmed S.A.'s dyslexia and also diagnosed him with ADHD. In the evaluation, S.A.'s first grade teacher noted that he was reading below grade level, which contradicted her report card grades for the second half of first grade.

11.     Finally, on November 20, 2007, over two years after the parents first requested services, MCPS found S.A. eligible for special education and granted him an IEP. However, the services provided in the IEP proved inadequate and fell far short of S.A.'s needs. For instance, S.A.'s IEP called for only four-and-a-half hours per week of special education instruction at HVES, specifically three hours of instruction outside of the general education setting, one hour

per week of special education instruction in a general education setting, and thirty minutes per week of counseling.

12.     The school system programming was clearly not enough for S.A.; he failed to make meaningful progress on his IEP goals and objectives. He continued to read two grade levels below, and the gap between his performance and grade expectancy continued to increase. A comparison of his 2008 educational testing scores with his 2007 evaluation reveals deterioration in written language and math fluency.

13.     The late and inadequate response of MCPS to address S.A.'s learning disability had a severe negative impact on both his self-esteem and self-confidence. Over the course of his last year at HVES, S.A. became anxious and frustrated with the school's rigid teaching approach. He was being teased and taunted by other children, and was feeling isolated from his friends who were entering more accelerated programs. Though S.A. loves being read to, he began to express hatred of reading himself. This deterioration in S.A.'s self-esteem and self-confidence eroded his motivation level, only further compounding his academic difficulties in the classroom. To address these emotional issues, S.A.'s parents provided private psychotherapy services for him.

14.     The MCPS proposed program and placement at HVES for the 2009-2010 year could not provide S.A. with the support he needed to be successful. Instead, S.A. required a small, self-contained school program designed to address his academic deficits, executive dysfunction, attention/self regulatory, and growing social/emotional issues. S.A. specifically required full-time special education with predictable routines and organizational systems that are consistently available across the school day. He also needed the availability of assistive technology to support reading and written language instruction. In addition to a full-time

program, S.A. needed to be in a small, well-managed environment where the sensory demands are carefully modulated.

15.     S.A.'s parents served required notice at the conclusion of the IEP meeting on May 1, 2009 and asked for placement and funding at Lab. MCPS refused. MCPS also refused parents the opportunity to have an educational consultant observe at HVES on their behalf. Ultimately, in August 2009, the parents chose to remove S.A from HVES and place him at Lab.

16.     Since starting at Lab in September of 2009, S.A. has thrived. He has had a very positive attitude; his motivation level is high. His parents have observed enthusiasm about lots of aspects of the curriculum, and have seen a comfort level in S.A. towards school that they had not seen at HVES. He is benefitting from the low teacher-student ratio, innovative teaching methodologies including reading intervention models, and access to specialized instruction across the entire school day. With these supports at Lab, S.A. is making progress and benefitting from the program.

17.     The parents filed an administrative due process appeal of the 2009-10 IEP and placement at HVES. That appeal, which began on June 9, 2010, concluded with *S.A. v. Mongtomery County Public Schools,* OAH No: MSDE-MONT-OT 09-40388 (June 9, 2010) and a finding by Administrative Law Judge Susan Sinrod, that the MCPS proposal for services was inappropriate and that S.A. was to be placed and funded at Lab. MCPS initially filed a judicial appeal of the ALJ's decision, but withdrew that appeal on or about December 8, 2010.

18.     MCPS belatedly returned to the IEP table in September, 2010 and proposed Highland View again for the 2010-2011 year. The team revised the IEP for the 2010-11 school year, and proposed seven hours and thirty minutes per week of special education services outside

of the general education setting, five hours per week of special education services inside of the general education setting, forty-five minute per week of Speech and Language Therapy and thirty minute session per month of Occupational Therapy. The IEP provided that S.A. would be placed at HVES. This proposal ignored the counsel and collaborative input of current instructional staff at Lab, the parents, and outside experts and is not appropriate for S.A.

19.     On December 13, 2010, the parents filed a Request for Due Process Hearing based on the failure of MCPS to provide S.A. with a FAPE. As a remedy for the MCPS failure, the parents requested reimbursement for the cost of placing S.A. at Lab for the 2010-11 school years. The parents also requested placement for S.A. at Lab prospectively.

20.     By filing an administrative appeal, the parents invoked their right to stay put protection under the IDEA. S.A.'s stay put, or current educational placement is the Lab School.

21.     The due process hearing was held on February 10, 23, 24, 25, and March 18, 2011.

22.     The parents presented witness testimony from Pamela Wasserman, Ted A. Culler Support Speech Language Pathologist with MCPS, David Holdefer, School Psychologist with MCPS, Amy B. Mounce, Educational Consultant, Eric A. Levine, Educational Consultant, Donna Pavluk, Senior Speech and Language Pathologist at Lab, Christine Chang, Director of Occupational Therapy at Lab, and Susan Gerson, Ph.D., Psychologist. The school system presented witness testimony from Philip A. Lynch, Supervisor, Teri A. Bell, Instructional Specialist for Occupational Therapy, Ted. A Culler, Support Speech Language Pathologist, Anne Dardarian, Principal, HVES, and Brenda Barbour, School Psychologist.

23.     On April 15, 2011, Administrative Law Lorraine E. Fraser issued her decision in

*S.A. v. Montgomery County Public Schools*, OAH No: MSDE-MONT-OT-10-44973. She held

that the parents failed to prove that the school system IEP of September 28, 2010 did not provide

S.A. a FAPE, and denied their request for reimbursement and prospective placement.

24.     In her decision, the ALJ fails to address several of the issues presented at hearing.

Specifically, she does not explain her conclusion that S.A. can be appropriately educated with

only seven-and-a-half hours of specialized instruction outside of the general education

environment, specifically when the Lab School staff advised otherwise. Similarly, the ALJ

ignored the evidence and testimony of S.A.'s anxiety and provided little explanation to support

her conclusion that he would not have difficulty with yet another transition. The ALJ does not

even mention the testimony of the parents' two educational consultants, Ms. Mounce and Dr.

Levine.

25.     Maryland Code Ann., Educ. §8-413(j) (2008) allows parties 120 calendar days

from the issuance of the hearing decision in which file an appeal and bring a civil action. The

deadline to appeal the April 15th ALJ's decision is therefore August 12, 2011.

26.     The IDEA requires that, during the "pendency of any proceedings conducted

pursuant to this section . . . the child shall remain in the then-current educational placement of the

child . . . until all such proceedings have been completed." 20 U.S.C. § 1415(j). This is known

as the "stay put" protection.

27.     Pursuant to the June 9, 2010 administrative decision, and Federal law, ALJ

Sinrod's agreement with the parents regarding the appropriateness of the parental placement

established the Lab School as S.A.'s current educational placement.

28.     On April 21, 2011, just six days after the ALJ issued her decision in the current matter, MCPS sent a letter indicating that it is no longer obligated to fund S.A.'s placement at Lab School and that all funding would cease immediately.

29.     The parents responded to this letter on April 28, 2011, inquiring as to how much time the school system intended to give them to file an appeal.  The parents stressed that while it was highly likely that they would be filing an appeal and invoking their legal right to stay put protection, they also hoped to consider the school system's placement for the 2011-12 school year before making a decision regarding any court action.

30.     In response, MCPS insisted that the parents file an immediate appeal in order to invoke stay put protection.

31.     For the reasons stated above, S.A. and his parents request that MCPS reimburse the parents for any costs not already paid by the school system for S.A.'s placement at Lab School for the 2010-11 school year, and prospectively place him at Lab School.  Because the time to appeal has not run and parents have not been given time to adequately prepare their appeal and consider the school system's placement for the 2011-12 school year, the parents reserve the right to amend this complaint.

32.     The ALJ's decision contains palpable errors of fact and law.

33.     The plaintiffs are aggrieved by the decision of the ALJ.

34.     The plaintiffs are further aggrieved by the action of MCPS in forcing them to file this immediate appeal.

35.     The plaintiffs have exhausted their administrative remedies.

## COUNT I

36.     Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 35.

37.     Defendants' failure to provide S.C. with a free appropriate public education violates plaintiffs' rights under the IDEA, Section 504, Section 1983, and Maryland law.

## COUNT II

38.     Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 37.

39.     Defendants' failure to propose an appropriate IEP and placement for S.A. for the 2010-11 school year violates the IDEA and Maryland law.

## COUNT III

40.     Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 39.

41.     The failure of the ALJ to order defendants to place and fund S.A. in an appropriate program violates the IDEA and Maryland Law.

## COUNT IV

42.     Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 41.

43.     The ALJ committed error, and violated plaintiffs' due process rights under the IDEA and Maryland law, by failing to render a proper decision based on an accurate and impartial understanding of the facts.

## COUNT V

44.     Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 43.

45.     The failure of defendants to provide plaintiffs with sufficient time to prepare this appeal and consider options for the 2011-12 school year violates the IDEA and Maryland law.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court:

1.      Issue judgment for plaintiffs and against defendants;

2.      Issue declaratory relief that defendants violated plaintiffs' rights under applicable law;

3.      Issue injunctive relief, vacating the decision of the ALJ and ordering defendants to reimburse plaintiffs for any costs not already paid by defendants associated with enrolling S.A. at the Lab School of Washington for the 2010-11 school year.

4.      Order defendants to place and fund S.A. at the Lab School of Washington for the 2011-12 school year and declare it to be S.C.'s current educational placement under the IDEA;

5.      Order defendants to pay plaintiffs' reasonable attorneys' fees and costs, including the fees and costs of this action; and

6.      Award any other relief that this Court deems just.

Respectfully Submitted,

Michael J. Eig          #07718
MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue
Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740

Counsel for Plaintiffs

-11-